MAR 10 2026 PM2:16
FILED - USDC - BPT - CT

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

In re Search Warrant : No. 3:26-mj-260 (SDV)

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH AND SEIZURE WARRANT

I, James J. Muhlbauer Jr., being duly sworn, hereby state as follows:

### INTRODUCTION

1. I have been employed as a Detective with the Special Investigation Juvenile Offense Unit of the Stamford Police Department since October of 2022. I also serve as a Task Force Officer with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), and have done so since September 2025. I received training at the State of Connecticut Municipal Police Academy and successfully completed course work relating to investigations of internet crimes against children. I have also participated in numerous federal and state criminal investigations, including investigations involving the sexual exploitation of minors.

2. I am a federal law enforcement officer authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

3. I am currently investigating Max Mota PINHO ("PINHO"), an adult male born in 1980, for receipt and possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and (a)(5)(B) (together, the "TARGET OFFENSES").

4. I submit this affidavit in support of an application under Rule 31 of the Federal Rules of Criminal Procedure for a warrant to search the property located at 7 Chatfield Street, First Floor, Stamford, Connecticut 06907 (the "SUBJECT PREMISES"), as further described in Attachment A, for electronic storage devices and other items located therein containing

identifying violations of federal child pornography laws and generating Cyber-Tips. Specifically, they compare files uploaded to or shared over their networks against the NCMEC database using the files' hash values. When a match occurs, the electronic communication service providers notify NCMEC and generate a Cyber-Tip.

9.      After NCMEC receives a Cyber-Tip, it forwards the report and associated files to federal or state law enforcement agencies in the area where NCMEC believes the offender is located.

### BACKGROUND ON VERIZON AND SYNCHRONOSS

10.      Verizon Wireless is a company that provides cellular telephone service to the general public. Verizon Wireless also provides cloud storage to its subscribers under the product name "Verizon Cloud." "Verizon Cloud" enables Verizon subscribers to synchronize and save data from their internet-connected devices like smartphones to their "Verizon Cloud" account. This data may include stored electronic communications, including text and multimedia messages, as well as contact lists, photos, videos, music, documents, message logs and call logs. The data also includes metadata associated with backed-up data, which, for example, might include the date, time, and location an image or video was taken, or the author and date of a saved document.

11.      Synchronoss Technologies, Inc. ("Synchronoss") is a cloud-storage service provider that has contracted with Verizon Wireless to store information saved to the "Verizon Cloud." Synchronoss's services allow subscribers to backup, synchronize, and store electronic data through automatic and manually initiated connections from internet-connected devices. As noted above, data stored by a "Verizon Cloud" subscriber can include contact lists, images, videos, music, text messages, call logs, and documents. A subscriber who has stored information in a Synchronoss online storage account can access this data using multiple devices, including computers and smartphones. In some cases, a subscriber can also share their stored data with other

administrative subpoena that linked the 154 IP Address to PINHO at the SUBJECT PREMISES. The telephone number listed for the Optimum account was the 1549 number. On December 3, 2025, Verizon Wireless provided records similarly linking the 1549 number to PINHO at the SUBJECT PREMISES.

17. On December 5, 2025, patrol officers from the Stamford Police Department conducted surveillance of the SUBJECT PREMISES and spoke with a woman who stated that she lives at the SUBJECT PREMISES with her husband, whom she identified as "Max."

18. On January 14, 2026, the Hon. S. Dave Vatti, United States Magistrate Judge, District of Connecticut, issued a warrant authorizing HSI to search the ACCOUNT, which I served on Synchronoss that same day. The following day, Synchronoss provided me with material responsive to the warrant, which included images and videos depicting child pornography as well as images of PINHO and photographs of items connected to PINHO, such as a check and a credit card with PINHO's name on them.

19. On January 19, 2026, I reviewed approximately thirty-three images and videos from the Synchronoss warrant return depicting child pornography, including images and videos of prepubescent females exposing their vaginas and anuses.

20. On February 10, 2026, an HSI special agent conducted surveillance at the SUBJECT PREMISES and observed a man who appeared to be PINHO exit the residence at approximately 7:13 a.m. On March 4, 2026, the same agent again conducted surveillance at the SUBJECT PREMISES and once again observed a man who appeared to be PINHO exit the residence at approximately 6:48 a.m.

## BACKGROUND ON CHILD PORNOGRAPHY, COMPUTERS, AND THE INTERNET

21. Based on my training, experience, and knowledge, I know the following:

with potential minor victims, and to access cloud-storage services where child pornography may be stored.

h. As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional (*i.e.*, by saving an email as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files) or unintentional. Digital information, such as the traces of the path of an electronic communication, may also be automatically stored in many places (*e.g.*, temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data.

22. Based on my previous investigative experience related to child exploitation investigations, and the training and experience of other law enforcement officers with whom I have spoken, I know there are certain characteristics common to individuals who possess, receive, distribute, and/or access with intent to view child pornography.

a. Such individuals may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or in other visual media, or from literature describing such activity.

b. Such individuals may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides, and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Such individuals almost always possess and maintain their hard copies of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain their pictures, films, video tapes, photographs, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, and child erotica, etc. for many years.

d. Likewise, such individuals often maintain their child pornography images in a digital or electronic format in a safe, secure, and private environment. These collections may exist on the individual's current as well as older cell phones, computers, and tablets. These child pornography images are often maintained for several years and are kept

for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

25.     I submit that if a computer (to include a mobile phone) or other electronic storage media is found at the SUBJECT PREMISES, there is probable cause to believe those records referenced above will be stored on that device, for at least the following reasons:

a.  Deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

b.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

c.  Wholly apart from user-generated files, electronic storage media—in particular, computers' internal hard drives—contain electronic evidence of how a device has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer and mobile phone users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the internet are sometimes automatically downloaded into a temporary internet directory or "cache."

26.     As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers and/or mobile phones were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on computers, mobile phones, and other electronic

and intent to commit a crime (*e.g.*, internet searches indicating criminal planning), or consciousness of guilt (*e.g.*, running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.  A person with appropriate familiarity with how a computer or mobile phone works can, after examining this forensic evidence in its proper context, draw conclusions about how such devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a computer or mobile phone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a computer or mobile phone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f.  I know that when an individual uses a computer or mobile phone to commit a crime, the device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. From my training and experience, I believe that a computer or mobile phone used to commit a crime of this type may contain: data that is evidence of how the device was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of discussions about the crime; and other records that indicate the nature of the offense.

27.  Based upon my training and experience and information relayed to me by agents and others involved in the forensic examination of computers and mobile phones, I know that computer data can be stored on a variety of systems and storage devices, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, floppy disks, compact disks, magnetic tapes, memory cards, memory chips, and online or offsite storage servers maintained by corporations.

is impractical to determine at the scene. Such devices can be disguised, mislabeled, or used without the owner's knowledge. In addition, technical, time, safety, or other constraints can prevent definitive determination of their ownership at the premises during the execution of this warrant. If the things described in Attachment B are of the type that might be found on any computer, mobile phone, or other electronic storage medium, this application seeks permission to search and seize it onsite or off-site in order to determine its true use or contents, regardless of how the contents or ownership appear or are described by people at the scene of the search. If, however, law enforcement can determine that such devices located within the SUBJECT PREMISES were not used by PINHO to commit the TARGET OFFENSES, those devices will not be seized or searched by law enforcement.

30. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

31. ***Authorization to use biometric features***. The warrant I am applying for would permit law enforcement to obtain from PINHO the display of physical biometric characteristics (such as fingerprint, thumbprint, or facial characteristics) in order to unlock devices subject to search and seizure pursuant to this warrant. I seek this authority based on the following:

a. I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices,

password has not been entered in the last 156 hours. Biometric features from other brands carry similar restrictions. Thus, in the event law enforcement personnel encounter a locked device equipped with biometric features, the opportunity to unlock the device through a biometric feature may exist for only a short time.

32.     Due to the foregoing, if law enforcement personnel encounter a device that is subject to search and seizure pursuant to this warrant and may be unlocked using one of the aforementioned biometric features, the warrant I am applying for would permit law enforcement personnel to (1) press or swipe the fingers (including thumbs) of PINHO to the fingerprint scanner of the device; and/or (2) hold the device in front of the face of PINHO and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search its contents as authorized by this warrant.

## **CONCLUSION**

33.     Based on the foregoing, I respectfully submit that there is probable cause to believe, and I do believe, that contraband, evidence, fruits, and instrumentalities of the TARGET OFFENSES are located at the SUBJECT PREMISES. Accordingly, I respectfully request that this Court issue a search warrant for the SUBJECT PREMISES, as described in Attachment A, authorizing the search and seizure of the items described in Attachment B.

Respectfully submitted,

_____
James J. Muhlbauer Jr.
Task Force Officer
Homeland Security Investigations

Subscribed and sworn to before me this 10th day of March, 2026, in Bridgeport, Connecticut.

_____
HONORABLE S. DAVE VATTI
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### DESCRIPTION OF LOCATION TO BE SEARCHED

The premises at 7 Chatfield Street, First Floor, Stamford, Connecticut, 06907 (referred to herein and in Attachment B as the "SUBJECT PREMISES"). The SUBJECT PREMISES is located on the first floor of a dark brown two-story multifamily home located at the corner of Chatfield Street and Hope Street in Stamford, Connecticut, with the primary entrance located on Chatfield Street. The side door on the west side of the building provides access to the first-floor apartment.



# ATTACHMENT B

## ITEMS TO BE SEIZED

All property, records, information, computers, mobile phones, and electronic storage media that constitute contraband, evidence, fruits, and/or instrumentalities of violations of 18 U.S.C. §§ 2252A(a)(2) (distribution and/or receipt of child pornography) and (a)(5)(B) (possession of child pornography) (together, the "TARGET OFFENSES") occurring from August 1, 2025, to the date this warrant is executed, including, but not limited to, the following:

1. All photographs, images, and videos, in any format, including any associated metadata or EXIF information, depicting child pornography, as defined in 18 U.S.C. § 2256, or that is evidence of a sexual interest in children;

2. Communications, in any format, pertaining to the TARGET OFFENSES;

3. Logs and notes, in any format, pertaining to the TARGET OFFENSES;

4. Names, addresses, contact information, or lists of names, addresses, or contact information, in any format, of those who may have been contacted in connection with the TARGET OFFENSES;

5. Records and information relating to the access or use of any websites, social media, messaging applications, or other computer/electronic device applications, including Telegram, to commit the TARGET OFFENSES;

6. Records of internet activity, including logs, caches, browser history, and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses related to the TARGET OFFENSES;

7. Records of Internet Protocol addresses used;

8. Records, information, and items relating to the occupancy or ownership of the SUBJECT PREMISES, including utility and telephone bills, mail envelopes, or addressed correspondence;

9. Evidence of who utilized the phone number ending in 1549 described in the search warrant affidavit;

10. Any mobile phone associated with the phone number ending 1549 described in the search warrant affidavit;

11.     Computers, mobile phones, and storage media that MAX MOTA PINHO used as a means to commit the TARGET OFFENSES;

12.     For any computer, mobile phone, or electronic storage medium whose seizure is authorized by this warrant (hereinafter, "DEVICE"):

    a.     Items 1 through 9 above;

    b.     Evidence of who used, accessed, owned, or controlled the DEVICE;

    c.     Evidence of software that would allow others to control the DEVICE, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    d.     Evidence of the lack of such malicious software;

    e.     Evidence indicating how and when the DEVICE was accessed or used, and evidence indicating the geographic location of the device when it was accessed or used;

    f.     Evidence indicating the DEVICE user's knowledge and/or intent as it relates to the TARGET OFFENSES;

    g.     Evidence of the attachment to the DEVICE of other storage devices or similar containers for electronic evidence;

    h.     Evidence of programs (and associated data) that are designed to eliminate data from the DEVICE;

    i.     Passwords, encryption keys, and other access devices that may be necessary to access the DEVICE;

    j.     Documentation and manuals that may be necessary to access the DEVICE or to conduct a forensic examination of the DEVICE;

    k.     Contextual information necessary to understand the evidence described in this attachment.

Pursuant to Rule 41(e)(2)(B), it is authorized that electronically stored information may be imaged or copied. With respect to a DEVICE containing electronically stored information, consistent with Rule 41(e)(2)(B), the warrant is deemed executed once the DEVICE has been physically seized or copied on-site, and the review of the contents of the DEVICE is permitted at a later time.

During the execution of the search, law enforcement personnel are authorized to (1) press or swipe the fingers (including thumbs) of MAX MOTA PINHO to the fingerprint scanner of the DEVICE and/or (2) hold the DEVICE in front of the face of MAX MOTA PINHO and activate

the facial recognition feature, for the purpose of attempting to unlock the device.

This warrant does **not** authorize law enforcement personnel to compel any other individuals found at the SUBJECT PREMISES to provide biometric features, as described in the preceding paragraph, to access or otherwise unlock any DEVICE. Further, this warrant does **not** authorize law enforcement personnel to compel MAX MOTA PINHO to state or otherwise provide the password or any other means that may be used to unlock or access the DEVICE, including by identifying the specific biometric characteristics (including the unique finger(s) or other physical features) that may be used to unlock or access the DEVICE.